Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIRANDA ANDERSON, | Case No: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| PREFERRED APARTMENT COMMUNITIES, INC., JOEL T. MURPHY, HOWARD A. MCLURE, STEVE BARTKOWSKI, JOHN M. CANNON, GARY B. COURSEY, SARA J. FINLEY, DAPHNE B. JACKSON, and TIMOTHY A. PETERSON, | |
| Defendants. | |

Plaintiff Miranda Anderson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Preferred Apartment Communities, Inc. ("Preferred Apartment" or the "Company") and its Board of Directors (the "Board" or the "Individual

1

Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Preferred Apartment by Blackstone Real Estate Income Trust, Inc. ("Blackstone").

<b><u>JURISDICTION AND VENUE</u></b>

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

<b><u>PARTIES</u></b>

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Preferred Apartment common stock.

2

7.      Defendant Preferred Apartment is a real estate investment trust engaged primarily in the ownership and operation of Class A multifamily properties, with select investments in grocery anchored shopping centers, Class A office buildings, and student housing properties. The Company is incorporated in Maryland. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "APTS."

8.      Defendant Joel T. Murphy ("Murphy") is President, Chief Executive Officer, and Chairman of the Board of the Company.

9.      Defendant Howard A. McLure ("McLure") is a director of the Company.

10.     Defendant Steve Bartkowski ("Bartkowski") is a director of the Company.

11.     Defendant John M. Cannon ("Cannon") is a director of the Company.

12.     Defendant Gary B. Coursey ("Coursey") is a director of the Company.

13.     Defendant Sara J. Finley ("Finley") is a director of the Company.

14.     Defendant Daphne B. Jackson ("Jackson") is a director of the Company.

15.     Defendant Timothy A. Peterson ("Peterson") is a director of the Company.

16.     Defendants Murphy, McLure, Bartkowski, Cannon, Coursey, Finley, Jackson, and Peterson are collectively referred to herein as the "Individual Defendants."

17.     Defendants Preferred Apartment and the Individual Defendants are collectively referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.  The Proposed Transaction**

18.     On February 16, 2022, Preferred Apartment announced that it had entered into a definitive agreement with Blackstone under which Blackstone would acquire all outstanding shares of Preferred Apartment common stock for $25.00 per share. The press release announcing

the Proposed Transaction states, in pertinent part:

### Preferred Apartment Communities, Inc. to be Acquired by Blackstone Real Estate Income Trust

*All-Cash Transaction For $25 Per Share of Common Stock Valued at Approximately $5.8 Billion*

February 16, 2022 08:30 AM Eastern Standard Time

ATLANTA & NEW YORK--(BUSINESS WIRE)--Preferred Apartment Communities (NYSE: APTS) ("PAC" or the "Company") today announced that it has entered into a definitive agreement with Blackstone Real Estate Income Trust, Inc. ("BREIT"), under which BREIT will acquire all outstanding shares of common stock of PAC for $25.00 per share in an all-cash transaction valued at approximately $5.8 billion.

Under the terms of the agreement, BREIT will acquire PAC, which includes 44 high-quality multifamily communities totaling approximately 12,000 units concentrated largely in Atlanta, Orlando, Tampa, Jacksonville, Charlotte and Nashville, and 54 grocery-anchored retail assets comprising approximately six million square feet located mostly in Atlanta, Orlando, Nashville and Raleigh. BREIT will also acquire the Company's two Sun Belt office properties and 10 mezzanine / preferred equity investments collateralized by under construction and newly-built multifamily assets.

\*       \*       \*

### Transaction Terms, Timing and Approvals

The holders of each series of PAC's preferred stock will receive the $1,000 per share liquidation preference for each share plus accrued but unpaid dividends. Subject to and upon completion of the transaction, PAC's common stock will no longer be listed on the New York Stock Exchange, and PAC will be owned by BREIT.

The transaction has been unanimously approved by PAC's Board of Directors and is expected to close in the second quarter of 2022, subject to approval by PAC's stockholders and other customary closing conditions. The merger agreement also includes a 30-day "go-shop" period that will expire on March 18, 2022. There can be no assurance that this process will result in a superior proposal, and PAC does not intend to disclose developments with respect to the go-shop process unless and until it determines such disclosure is appropriate or is otherwise required.

### Advisors

Jones Lang LaSalle Limited, BofA Securities, Lazard Frères & Co. LLC and Wells Fargo Securities LLC are serving as BREIT's financial advisors, and Simpson Thacher & Bartlett LLP is acting as BREIT's legal counsel.

Goldman Sachs & Co. LLC is serving as PAC's lead financial advisor. KeyBanc Capital Markets, Inc., is also serving as financial advisor to PAC. King & Spalding LLP and Vinson & Elkins LLP are serving as the Company's legal counsel.

**About Preferred Apartment Communities, Inc.**

Preferred Apartment Communities, Inc. (NYSE: APTS) is a real estate investment trust engaged primarily in the ownership and operation of Class A multifamily properties, with select investments in grocery anchored shopping centers. Preferred Apartment Communities' investment objective is to generate attractive, stable returns for stockholders by investing in income-producing properties and acquiring or originating multifamily real estate loans. As of September 30, 2021, the Company owned or was invested in 107 properties in 13 states, predominantly in the Southeast region of the United States. Learn more at www.pacapts.com.

**Blackstone Real Estate Income Trust**

Blackstone Real Estate Income Trust, Inc. (BREIT) is a perpetual-life, institutional quality real estate investment platform that brings private real estate to income focused investors. BREIT invests primarily in stabilized, income-generating U.S. commercial real estate across key property types and to a lesser extent in real estate debt investments. BREIT is externally managed by a subsidiary of Blackstone (NYSE: BX), a global leader in real estate investing. Blackstone's real estate business was founded in 1991 and has approximately $279 billion in investor capital under management. Further information is available at www.breit.com.

19.    On March 25, 2022, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20.    The Proxy Statement, which recommends that Preferred Apartment shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Preferred Apartment's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), in connection with

5

its fairness opinion; (iii) potential conflicts of interest involving Company insiders; and (iv) the sales process in connection with the Proposed Transaction.

21.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Mergers; (ii) Reasons for the Mergers; (iii) Recommendation of Our Board of Directors; (iv) Unaudited Prospective Financial Information; and (v) Opinion of Our Financial Advisor.

22.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Preferred Apartment shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.   Material Omissions Concerning Preferred Apartment's Financial Projections**

23.     The Proxy Statement omits material information concerning Preferred Apartment's financial projections.

24.     With respect to Preferred Apartment's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) the Company's net income projections; (3) the Company's cash flow projections, and all underlying line items; and (4) a reconciliation of all non-GAAP to GAAP metrics.

25.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Preferred Apartment and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such

information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

27.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman's Analyses

28.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman.

29.     With respect to Goldman's "*Selected Publicly Traded Companies Analysis*," the

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 6, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

Proxy Statement fails to disclose the individual financial metrics of each company Goldman observed in its analysis, including each company's next twelve months' FFO and average of each company's historical price.

30.     With respect to Goldman's "*Illustrative Present Value of Future Share Price Analysis*," the Proxy Statement fails to disclose the individual inputs and assumptions underlying the (i) multiples ranging from 13.5x to 23.5x, and (ii) discount rate of 9.9%.

31.     The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Levered Discounted Cash Flow Analysis*": (1) the levered free cash flow to be generated by the Company for the period from January 1, 2022 to December 31, 2026, and all underlying line items; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 8.5% to 11.5%, (ii) terminal year multiples of 13.5x to 23.5x, and (iii) perpetuity growth rates ranging from 1.0% to 6.9%; (3) the terminal values for the Company; and (4) the implied total number of fully diluted shares of common stock estimated to be outstanding as of February 9, 2022.

32.     With respect to Goldman's "*Premia Paid Analysis*," the Proxy Statement fails to disclose the transactions observed and the premiums paid therein.

33.     The valuation methods, underlying assumptions, and key inputs used by Goldman in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Goldman's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

34.     Without the information described above, the Company's shareholders are unable to fully understand Goldman's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the

Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

35.     The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

36.     The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

37.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

38.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process in Connection with the Proposed Transaction

39.     The Proxy Statement omits material information concerning the sales process in connection with the Proposed Transaction.

40.     The Proxy Statement provides that, "[d]uring the go-shop period, Goldman Sachs contacted 23 potential counterparties (including Party A, Party B and Party C), consisting of five strategic parties and 18 financial sponsor parties, and received inbound inquiries from two additional potential counterparties (one strategic and one financial). Of these 25 parties, nine,

including Party A, Party B and Party C, entered into a confidentiality agreement with the Company."

41.     The Proxy Statement, however, fails to disclose all the terms of the Company's confidentiality agreements, including whether such agreements contained standstill provisions and "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potential buyers from making superior offers for the Company.

42.     Without this information, the Company's shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact they may be contractually prohibited from doing so. This information is material because a reasonable Preferred Apartment shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potentially interested parties are or were foreclosed from submitting a superior proposal.

43.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46.     Each of the Individual Defendants, by virtue of his/her positions within the

Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

47.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the

false and misleading Proxy Statement.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

54.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 6, 2022                                  Respectfully submitted,

                                                      **HALPER SADEH LLP**

                                                      By: /s/ Daniel Sadeh
                                                      Daniel Sadeh, Esq.

Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*